```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

SAM M. HOPE, II,

    Plaintiff,

v.                                                  Civil Action No. 2:12-cv-6559

THE BOARD OF DIRECTORS OF KANAWHA
PUBLIC SERVICE DISTRICT and
KANAWHA PUBLIC SERVICE DISTRICT,
a political subdivision, and
DAVID HOWELL, C.P.A., individually
and in his capacity as Chairman
of the Kanawha Public Service District,

    Defendants.


## MEMORANDUM OPINION & ORDER

Pending is the motion to dismiss by defendant David Howell, C.P.A., filed October 12, 2012. On October 19, 2012, defendants Kanawha Public Service District ("KPSD") and the Board of Directors of Kanawha Public Service District ("the Board") joined Howell's motion.

### I. Background

This case arises from the allegedly wrongful and retaliatory termination of plaintiff Sam M. Hope II from his employment with KPSD. The following allegations of fact are taken from Hope's first amended complaint ("the complaint").

Hope is a resident of Kanawha County, West Virginia. Compl. ¶ 1.  KPSD is a Kanawha County government agency and is operated by the Board.  Id. ¶ 2.  KPSD's "predecessor in title" was Chelyan Public Service District ("CPSD").  Id. ¶ 1.  Howell is and was the chairman of the KPSD Board.  Id. ¶ 3.  The date and nature of the CPSD's transition to KPSD are unclear from the complaint.  Likewise, it is unclear whether Howell had served as the chairman of the CPSD Board.

Hope was an employee of KPSD "and/or" its predecessor, CPSD, beginning October 14, 1995.  Id. ¶ 5.  On his final date of employment, September 13, 2012, he served as General Manager.  The complaint does not state when Hope began his position as General Manager or mention any previous roles he had at KPSD.  Id.  On dates unspecified in the complaint, Hope reported to the West Virginia Ethics Commission, the Public Service Commission of West Virginia, and "others" concerning "illegal, unethical and/or improper practices" at KPSD.  Id. ¶ 6.  These practices occurred "under the watch or by the direction of" Howell and included "unethical hiring practices, the revision of the Administrative practices to permit nepotism and favoritism by Defendant Howell, the termination of employees for pointing out financial irregularities to Defendant Howell, and/or the hiding of misappropriation of funds by employees of KPSD."  Id.

On September 13, 2012, the defendants terminated Hope's employment with KPSD.  Id. ¶ 5.  The termination was said to be the result of "a financial reorganization eliminating his position."  Id. ¶ 9.  Hope asserts that his termination was in retaliation for the ethics complaints.  Id.  The financial reorganization was "a ruse or pretense to disguise the true motivation behind [the defendants'] actions, especially inasmuch as the plaintiff was a General Manager."  Id.  Hope states that he "has suffered and continues to suffer lost wages, great annoyance and inconvenience, mental anguish, pain and suffering, and other damages to be proven at trial."  Id. ¶ 10.

The following day, on September 14, 2012, Hope filed this action in the Circuit Court of Kanawha County, West Virginia.  Five days later, Hope filed a first amended complaint.  On October 12, 2012, the defendants removed the action to federal court, pursuant to this court's federal question jurisdiction under 28 U.S.C. § 1331.

Hope's complaint sets forth four counts.  Count I alleges violation of the West Virginia Whistle-blower Law.  Count II alleges discharge in contravention of public policy, commonly known as a Harless claim.  Count III alleges constitutional torts, particularly the violation of the First and Fourteenth Amendments to the U.S. Constitution and Article III, sections 10 and 16 of the West Virginia Constitution.

Lastly, Count IV alleges intentional infliction of emotional distress.

## II. The Governing Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009). Facial plausibility exists when the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 566 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,'" but it requires

4

more than a "sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

In assessing plausibility, the court must accept as true the factual allegations contained in the complaint, but not the legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The determination is "context-specific" and requires "the reviewing court to draw on its judicial experience and common sense." Id. at 679.

### III. Discussion

**A. Sufficiency of the pleadings**

Howell argues that Hope's complaint consists of "conclusory, unsupported allegations" and fails to satisfy the pleadings standards set forth in Twombly and Iqbal. Howell's Mem. Supp. Mot. Dismiss 9. Howell first contends that the complaint is deficient for failing to allege specifics regarding Hope's ethics complaints and the underlying conduct. Howell, however, provides no authority that Hope must plead such specifics to set forth any of his claims. With respect to Count I, for example, additional details of the underlying complaints appear unnecessary: the Whistle-blower Law requires only that the plaintiff "makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority

5

an instance of wrongdoing or waste." W. Va. Code § 6C-1-3(a). Hope's complaint alleges that he made several such reports, providing both the nature of the reported wrongdoing (albeit in somewhat general terms) and the names of the authority to whom the reports were made. Compl. ¶ 6.

1. Count I

Howell seeks dismissal of the Count I Whistle-blower Law claim on the ground that Hope failed to allege Howell's awareness of the ethics complaints. At the pleadings stage the court must "draw all reasonable inferences in favor of the plaintiff," Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009), and it is reasonable to infer that the chairman of a board of directors for a public service district would, in the course of his duties, become aware of ethics complaints an employee made about him to the West Virginia Ethics Commission and the Public Service Commission of West Virginia.

2. Count II

Howell seeks to dismiss Hope's Count II Harless claim for discharge in contravention of public policy on the basis that the complaint incorrectly states that the alleged violation arose from Hope's "reassignment, demotion, and/or sequestration." Howell Mem. Supp. Mot. Dismiss 7 (quoting

6

Compl. ¶ 12).  Howell argues that the allegations are based on a termination and that there are "absolutely no facts alleged" that Hope was reassigned, demoted or sequestered.  Id.  Notwithstanding the complaint's imprecise language, Hope's meaning is sufficiently clear to adequately state a claim inasmuch as he has elsewhere in the complaint alleged that he was fired.

Nonetheless, the defendants argue persuasively that Hope cannot assert a Harless claim -- for discharge in contravention of public policy -- because the Whistle-blower Law already gives him a mechanism to enforce the underlying public policy.

In Harless, the West Virginia Supreme Court of Appeals considered a lending institution's firing of an employee who had reported violations of the West Virginia Consumer Credit and Protection Act.  Harless v. First Nat'l Bank in Fairmont, 246 S.E.2d 270, 272 (W. Va. 1978).  In Harless, the court first noted that:

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., id. at 271.  "[M]anifest public policy" would be "frustrated" if an employee who had taken steps to enforce the

7

public policy could be "discharged without being furnished a cause of action for such discharge." Id. at 276.

The "without being furnished" language is critical. In Hill v. Stowers, the high court declined to extend the Harless cause of action to a plaintiff who alleged that he had lost an election due to his opponent's election fraud. 680 S.E.2d 66, 69 (W. Va. 2009). The court explained,

> In Harless, this Court found that a private cause of action was appropriate because there was no other mechanism available to enforce the public policy at issue. . . . [T]here are procedures in place that allow a candidate in an election to contest the results. These procedures constitute the mechanism by which the Legislature has sought to secure free and fair elections in this State.

Id. at 76. Consequently, resort to Harless was deemed inapt inasmuch as other mechanisms existed to reinforce the public policy at issue.

Here, the same principle prevents Hope from asserting a Harless claim along with his claim under the West Virginia Whistle-blower Law. The Whistle-blower Law enables Hope to enforce his right to report ethical violations without the fear of retaliatory employment actions. With a clear mechanism in place to enforce this public policy, a Harless cause of action is unavailable.[1]

---

[1] In a notice of supplemental authority, filed June 17, 2013, Howell asserts that a recent state Supreme Court memorandum decision further supports the dismissal of Count II based on

8

3.   Count III

Count III alleges the following constitutional torts:

> The actions of the defendants constitute a constitutional tort in that the plaintiff has been deprived of his property, to-wit: his employment, his reputation, his freedom of association, and others, without due process of law as guaranteed by the provisions of Article 3, § 10 & § 16 of the West Virginia Constitution and the First, and Fourteenth Amendments of the Constitution of the United States. Moreover, the termination of the plaintiff was in retaliation for exercising the rights and privileges guaranteed under the First Amendment, i.e. the right of the people to petition the Government for a redress of grievances.

Compl. ¶ 16.  The court construes these somewhat vague allegations as asserting the following claims: 1) a violation of Fourteenth Amendment procedural due process, 2) a First Amendment retaliation claim, and 3) violations of West Virginia Constitution, Article III, sections 10 and 16.  In moving for dismissal, Howell argues that Hope did not plead facts with respect to how his reputation, freedom of association, and other property rights were deprived or how the termination could have violated his constitutional rights.  Howell's Mem. Supp. Mot. Dismiss 7.

a.   Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life

---

"statutory preemption."  See <u>Broschart v. Dept. of Health & Human Servs.</u>, No. 11-C-38, 2013 WL 2301777 (W. Va. May 24, 2013).

liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "'The root requirement'" for due process is "'that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Boddie v. Connecticut, 401 U.S. 593, 599 (1972)) (emphasis omitted). The Supreme Court has summarized the two-step analysis as follows: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).

  Hope fails to state a claim for the violation of his procedural due process rights. Most noticeably, the complaint lacks any allegation that the defendants denied Hope an opportunity for a hearing. Additionally, the complaint fails to allege the deprivation of a recognizable property interest. "In order to have a protected property interest in his employment, a person must possess a legitimate claim of entitlement to it -- created, for example, by contract or state law." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 308 n.14 (4th Cir. 2006) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577-78 (1972)). Hope provides no allegations suggesting he had a "legitimate claim of entitlement." Hope's position at KPSD appears to be at-will in that he references no contract,

10

statutory provisions, or implied promises from which the court might infer otherwise.

Further, Hope's alleged reputational injury does not constitute a liberty interest that supports a due process claim. The Supreme Court has explained that the mere fact a public employee is discharged does not implicate a liberty interest:

> In Board of Regents v. Roth, we recognized that the nonretention of an untenured college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far "to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." This same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge.

Bishop v. Wood, 426 U.S. 341, 348 (1976) (internal citations omitted). Hope received an innocuous explanation for his termination, and no factual allegations suggest that the defendants made any records or communications regarding the termination that might damage Hope's reputation. In the absence of allegations that he was denied a hearing, and lacking a valid property or liberty interest, Hope fails to assert a tenable procedural due process claim.

b.  First Amendment

The lack of a property interest, however, does not thwart Hope's First Amendment claim. "[P]ossession of a

11

property right is immaterial to a plaintiff's claim that he was deprived of some valuable benefit as a result of exercising his First Amendment rights."  Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990) (citing Perry v. Sindermann, 408 U.S. 593, 597 (1972)).

It is well-settled that a public employer "may not retaliate against a public employee who exercises her First Amendment right to speak out on a matter of public concern." Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir. 2004) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 573 (1968)).  To prove that a retaliatory employment action violated a public employee's free speech rights, the employee must satisfy the following three-prong test formulated by the court of appeals in McVey v. Stacy:

> First, the public employee must have spoken as a citizen, not as an employee, on a matter of public concern.  Second, the employee's interest in the expression at issue must have outweighed the employer's interest in providing effective and efficient services to the public.  Third, there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action.

157 F.3d 271, 277-78 (4th Cir. 1998); see also Smith v. Frye, 488 F.3d 263, 267 (4th Cir. 2007) (applying "the McVey test"); Ridpath, 447 F.3d at 316 (same).

Taking the complaint's allegations as true and viewing them in the light most favorable to Hope, as the court must at

12

this stage, Hope has adequately established each of the McVey test's three prongs. Respecting the first prong, "[a]n employee's speech involves a matter of public concern if it addresses 'an issue of social, political, or other interest to a community.'" Ridpath, 447 F.3d at 316 (quoting Urofsky v. Gilmore, 216 F.3d 401, 406-07 (4th Cir. 2000)). Hope alleges that he reported to the West Virginia Ethics Commission unethical conduct of the KPSD under Howell, including unethical hiring practices and nepotism, the termination of employees for pointing out financial regularities, and the hiding of misappropriation of funds. Compl. ¶ 6. Inasmuch as the public would expect the fair administration of a government agency charged with regulating utilities, Hope's speech is on a matter of public concern. See, e.g., Corbett v. Duerring, 780 F. Supp. 2d 486, 493 (S.D. W. Va. 2011) (concluding that a plaintiff sufficiently alleged a matter of public concern where the speech addressed the "fair and impartial enforcement of rules by school administrators").

Respecting the second McVey prong, the balancing of interests, the court "must take into account the context of the employee's speech and the extent to which it disrupts the operation and mission of the institution." Ridpath, 447 F.3d at 317 (internal quotation marks omitted). The complaint's allegations support an inference at this stage that Hope's interest in First Amendment expression outweighs the defendants'

13

interests in providing effective and efficient services to the public. The defendants offer no argument that Hope's speech disrupted their ability to provide effective and efficient services.

The defendants' assertion that Hope's termination was the result of the KPSD's financial reorganization is properly considered within the third McVey prong, concerning the causal relationship. A plaintiff must "demonstrate a causal relationship between his protected speech and the termination of his [employment]." Id. at 318 (citing McVey, 157 F.3d at 277-78). Hope alleges that the termination was the retaliatory result of his expression, with the reorganization being merely a ruse. The "causation requirement is rigorous," Huang, 902 F.2d at 1140, and must be further developed to create a triable issue, but at the pleadings stage Hope's allegations provide sufficient grounds for the court to infer causation.

        c.   West Virginia Constitution

The court reaches the same conclusions with regard to Hope's state constitution claims: the due process claim fails, while the free speech claim is viable. Article III, section 10 of the West Virginia Constitution is analogous to the Due Process Clause of the Fourteenth Amendment, stating that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W. Va.

14

Const. art. III, § 10. The West Virginia Supreme Court has stated that "[a] property interest 'must be more than a unilateral expectation of continued employment.'" Kessel v. Monongalia Cnty. Gen. Hosp. Co., 600 S.E.2d 321, 327-28 (W. Va. 2004) (quoting Major v. DeFrench, 286 S.E.2d 688, 695 (W. Va. 1982)). Having pled only a unilateral interest in his continued employment, Hope's state constitutional due process claim, like his federal claim, fails for lack of a recognizable property interest.

Article III, section 16 of the West Virginia Constitution provides that "[t]he right of the people to assemble in a peaceable manner, to consult for the common good, to instruct their representatives, or to apply for redress of grievances, shall be held inviolate." W. Va. Const. art. III, § 16. "[T]he right to petition the government found in Section 16 of Article III of the West Virginia Constitution is comparable to that found in the First Amendment to the United States Constitution." Syl., Harris v. Adkins, 432 S.E.2d 549, 550 (W. Va. 1993). Consequently, for the reasons discussed above with regard to the First Amendment, Hope adequately states an Article III, section 16 claim.

    4. Count IV.

In arguing for the dismissal of Count IV's intentional infliction of emotional distress claim, the defendants assert

15

that Hope fails to allege outrageous conduct.  Intentional infliction of emotional distress is defined as follows:

> "One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for bodily harm."

Roth v. DeFeliceCare, Inc., 700 S.E.2d 183, 194 (W. Va. 2010) (quoting Dzinglski v. Weirton Steel Corp., 445 S.E.2d 219, 225 (W. Va. 1994)).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Id. (quoting Dzinglski, 445 S.E.2d at 225).  Specifically within the context of a wrongful discharge claim,

> The prevailing rule in distinguishing a wrongful discharge claim from an outrage claim is this: when the employee's distress results from the fact of his discharge -- e.g., the embarrassment and financial loss stemming from the plaintiff's firing -- rather than from any improper conduct on the part of the employer in effecting the discharge, then no claim for intentional infliction of emotional distress can attach.  When, however, the employee's distress results from the outrageous manner by which the employer effected the discharge, the employee may recover under the tort of outrage.  In other words, the wrongful discharge action depends solely on the validity of the employer's motivation or reason for the discharge.  Therefore, any other conduct that surrounds the dismissal must be weighed to determine whether the employer's manner of effecting the discharge was outrageous.

Id. (quoting Syl. Pt. 2, Dzinglski, 445 S.E.2d at 221).

16

Hope's allegations are insufficient to support a claim for intentional infliction of emotional distress.  Regarding the defendants' manner of effecting the termination, Hope states only that his firing was explained as "a financial reorganization eliminating his position."  Compl. ¶ 9.  There are no allegations concerning the conduct by Howell or other board members that "surrounds the dismissal."  Nor are there other facts from which the court could infer that outrageous conduct by the defendants and not the loss of his job caused Hope's emotional distress.  See Roth, 700 S.E.2d at 195 ("Given the proximity between Mrs. Roth's observation [of her supervisor in a sexually compromising position] and her termination, there are sufficient allegations to support her claim that her emotional distress resulted from the outrageous manner by which the employer effected the discharge.").  Absent these allegations, Hope has failed to state a claim for intentional infliction of emotional distress.

B. Immunity

The defendants argue that Howell is immune from liability as a public service district board member by statute and is otherwise entitled to qualified immunity.

The West Virginia Code expressly limits the liability for public service district board members:

> The members of the board are not personally liable or responsible for any obligations of the district or the board, but are answerable only for willful misconduct in the performance of their duties.

W. Va. Code § 16-13A-4.  Similarly, but more generally, West Virginia law provides qualified immunity to public executive officials acting within the scope of their authority:

> A public executive official who is acting within the scope of his authority and is not covered by the provisions of W. Va. Code, 29-12A-1, et seq., is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known.  There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive.

Syl., State v. Chase Secs., Inc., 424 S.E.2d 591, 591-92 (W. Va. 1992).

   The defendants assert that Howell is entitled to immunity from personal liability because his conduct occurred in the performance of his duties as the chairman of the board.  Hope responds that immunity is improper where the actions are clearly illegal, and he asserts that such was the case with Howell's allegedly retaliatory firing.  Opp'n 5 ("To argue that Defendant Howell could have reasonably believed that firing an individual for turning in allegations of misconduct was within the bounds of the law is disingenuous.").  Inasmuch as Hope claims that Howell fired him in retribution for reporting ethics violations, the complaint adequately alleges "willful, wanton, [and] malicious" conduct beyond the scope of Howell's authority.

Compl. ¶ 21.  Taking these allegations as true, as the court must do at the pleadings stage, Howell is not entitled to immunity.

KPSD and the Board argue that dismissal is nonetheless appropriate because the defendants did not violate a known statutory or constitutional right.  KPSD's Reply 6-7.  They cite Harlow v. Fitzgerald, in which the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  457 U.S. 800, 818 (1982).  It is clearly established, however, that "a plaintiff asserting 'whistle-blower' type claims . . . whose expressions relate to a matter of public concern and are alleged to have provoked retaliatory action are afforded First Amendment protection."  Givens v. O'Quinn, 121 F. App'x 984, 997 (4th Cir. 2005) (citing Connick v. Myers, 461 U.S. 138, 146-51 (1983)).

Howell also asserts that he could not have known that the firing violated established laws, absent allegations that he was first aware of Hope's ethics complaints.  As discussed above with regard to pleading standards, Howell's knowledge of the complaints can reasonably be inferred at this stage.

19

IV.

Based upon the foregoing discussion, it is, accordingly, ORDERED that the defendants' motion to dismiss be granted as set forth herein and otherwise denied.

It is further ORDERED as follows:

1. Count II is dismissed;

2. Count III is dismissed as to due process claims under the Fourteenth Amendment and Article III, section 10 of the West Virginia Constitution; and

3. Count IV is dismissed.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: July 2, 2013

_____
John T. Copenhaver, Jr.
United States District Judge